UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| FRANCIS DEVITO and JEFF MEISKIN, Individually and on behalf of all Others similarly situated, | : : : |
| | : |
| Plaintiffs, | : Civ. Action No.: 07-00418 |
| | : |
| vs. | : |
| | : |
| AETNA INC., d/b/a AETNA U.S. HEALTHCARE INC., and AETNA HEALTH, INC., | : : : |
| | : |
| Defendants. | : |
| | : |

---

MEMORANDUM OF LAW ON BEHALF OF PLAINTIFFS,
FRANCIS DEVITO and JEFF MEISKIN IN OPPOSITION
TO DEFENDANTS AETNA, INC.'S MOTION TO DISMISS COMPLAINT

---

Bruce H. Nagel, Esq.
(BN 6765)
NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, NJ 07068
(973) 618-0400
Attorneys for Plaintiffs

On the Brief:
    Randee M. Matloff, Esq.
    Bruce H. Nagel, Esq.

Of Counsel:
    Bruce H. Nagel, Esq.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................... ii

PREFATORY STATEMENT .............................................. 1

FACTUAL SUMMARY ................................................. 4

ARGUMENT
POINT I
THIS COURT SHOULD NEITHER ABSTAIN
NOR DEFER TO DOBI ............................................. 11

POINT II
WHETHER TREATED AS AN ERISA CLAIM OR A
STATE LAW CLAIM PREEMPTION DOES NOT PRECLUDE
PLAINTIFFS FROM RECEIVING THE PROTECTION
PROVIDED BY THE PARITY LAW .................................... 15

POINT III
PLAINTIFFS' COMPLAINT MAY NOT BE DISMISSED
UNDER FED R. CIV. PRO. 12(b)(6) .............................. 16

POINT IV
AETNA'S ARGUMENT REGARDING
EXHAUSTION LACKS MERIT ....................................... 21

CONCLUSION ................................................... 27

## TABLE OF AUTHORITIES

CASES                                                                    PAGE

Berger v. Edgewater Steel Co.,
911 F.3d 911 (3rd Cir. 1990) ...................................24

Carducci v. Aetna U.S. Healthcare,
204 F.Supp. 2d 796 (D.N.J. 2002)
aff'd, Levine v. United Healthcare Corp.,
402 F.3d 156 (3rd Cir. 2005) cert. den.
126 S.Ct. 747 (2005) ...................................19,25,26

Empire Kosher Poultry, Inc.
v. United Food & Commercial Workers
Health & Welfare Fund of Northern Pennsylvania,
285 F.Supp. 2d 473 (M.D. Pa. 2003) ...........................17

Grayson v. Mayview State Hosp.,
293 F.3d 103 (3rd Cir. 2002) ...................................17

Great Bay Hotel & Casino v. Tose,
34 F.3d 1227 (3d Cir. 1994) ...................................13

Great-West Life & Annuity
Ins. Co. v. Knudson,
534 U.S. 204 (2002) ...........................................19

Harrow v. Prudential Co. of America,
279 F.3d 244 (3rd Cir. 2002) .........................22,23,24,26

Hawaii Housing Auth. V. Midkiff,
467 U.S. 229 (1984) ...........................................11

In re Burlington Coat Factory Litig.,
114 F.3d 1410 (3d Cir. 1997) ..................................16

Kentucky Assn. Of Health Plans v. Miller,
538 U.S. 329 (2003) ...........................................15

Langford v. City of Atlantic City,
235 F.3d 845 (3rd Cir. 2000) ..................................17

Majka v. Prudential Co.,
171 F.Supp 2d 410 (D.N.J. 2001) ...........................24,25

Nazay v. Miller,
949 F.2d 1323 (3rd Cir. 1991) ................................. 18

New Orleans Pub. Serv., Inc.
v. Council of the City of New Orleans,
491 U.S. 350 (1989) ......................................... 12

Pinto v. Reliance Standard Life Ins. Co.,
214 F.3d 377 (3rd Cir. 2000) .............................. 18,19

Riley v. Simmons,
45 F.3d 764 (3rd Cir. 1995) .................................. 11

Shiffler v. Equitable Life Assurance Society,
838 F.2d 78 (3rd Cir. 1988) .................................. 18

Werbler v. Horizon Blue Cross
Blue Shield of New Jersey,
2006 WL 3511181 (D.N.J. Dec. 5, 2006) ........................ 18

RULES & STATUTES

29 U.S.C.A. 1144(b)(2)(A) .................................... 15

Fed.R.Civ.Pro. 12(b)(6) ......................... 1,2,16,17,20,21

N.J.A.C 11:1-15.1. ........................................... 13

N.J.A.C. 11:24-8.7(g) ........................................ 22

N.J.S.A 26:2J-4.20. ........................................... 4

## PREFATORY STATEMENT

Moving in tandem with Horizon, which has filed a similar motion returnable July 23, 2007, Aetna, Inc. and Aetna Health, Inc. (herein "Aetna") seek to dismiss a class action filed on behalf of plaintiffs pursuant to Section 502 and Section 514 of ERISA seeking medical benefits, arguing that the Court should abstain or that plaintiffs have failed to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).[1]

More specifically, Aetna would ask this Court to require each family to petition DOBI in order to obtain clarification of insurance regulations to make them state the obvious: that eating disorders are biologically based. This argument must fail for many reasons, not the least of which is that Aetna has a contractual limitation on coverage whether the eating disorder is deemed biologically based or not.

Additionally, Aetna seeks dismissal claiming that plaintiffs have not established that they are entitled to the relief because they cannot establish that benefits were denied arbitrarily. However, this is a 12(b)(6) motion and plaintiffs are not required to prove the underlying case in order to defeat

---

[1] To the extent that Aetna relies upon the two briefs submitted by Horizon in support of its motions, plaintiffs incorporate by reference its briefs in opposition to Horizon's motion to dismiss. At the Court's request an additional copy of this submission which can be found on PACER as Item 12 in Foley et al v. Horizon, Civil Action No. 06-06129 will be provided.

a motion to dismiss on the pleadings. Aetna has essentially converted its 12(b)(6) motion into a motion for summary judgment at the earliest stages of the litigation with no discovery at all.

Finally, Aetna seeks dismissal based upon plaintiff's failure to exhaust the contractual grievance procedures. Again this exhaustion argument misses the mark. This process addresses medical necessity and would be futile, in view of the contractual limitation on coverage; the undisputed fact remains that Aetna has not covered any eating disorder claim <u>beyond</u> its unlawful contractual limitations, whether that claim is medically necessary or not. In this application, Aetna must be required to address the core question: is the contractual limitation of coverage lawful. Indeed, medical necessity and the need to exhaust the internal appeals process are both red herrings; the real issue is whether the uniform coverage limitation on eating disorders will be enforced. Tellingly, Aetna never once advises the Court that it will cover medically necessary treatment <u>beyond</u> the limitation period. Thus, for purposes of this motion, the medical necessity of the treatment must be presumed and the sole focus should be on whether the across the board limitation on coverage, which turns solely on the issue of the biologic basis of the eating disorder, will be the subject of a trial.

At the pleading stage, plaintiffs' allegations that anorexia is biologically based must be assumed to be true for purposes of this motion. Hence, the contractual limitation imposed by Aetna is the real issue before the court; the exhaustion procedure set forth in the plan has nothing to do with whether the limitation on coverage is lawful.

## FACTUAL SUMMARY

The Parity Law, N.J.S.A. 26:2J-4.20, as currently framed provides, in relevant part:

> Every enrollee agreement delivered, issued, executed or renewed in this State . . shall provide heath care services for biologically-based mental illness under the same terms and conditions as provided for any other sickness under the agreement. "Biologically-based mental illness" means a mental or nervous condition that is caused by a biological disorder of the brain and results in a clinically significant or psychological syndrome or pattern that substantially limits the functioning of the person with the illness, including but not limited to, schizophrenia, schizoaffective disorder, major depressive disorder, bipolar disorder, paranoia and other psychotic disorders, obsessive-compulsive disorder, panic disorder and pervasive developmental disorder or autism. "Same terms and conditions" means that the health maintenance organization cannot apply different co-payments, deductibles or health care services limits to biologically-based mental health care services than those applied to other medical or surgical health care services.

The insurance policies for the both the DeVito and Meiskin families contain an essentially, identical definition of Biologically-Based Mental Illness ("BBMI"). (See e.g. Exhibit A to Petrozelli Cert. at page 10 and Exhibit B at page 7.) Although the Parity Law does not include a definition of what a Non-Biologically Based Mental Illness is, the Aetna policies at issue do so, and define Non-Biologically Based Mental Illness as: "An illness which manifests symptoms which are primarily mental or nervous for which the primary treatment is

4

psychotherapy or psychotropic medication where the Illness is not biologically based. In determining whether or not a particular condition is a Non-Biologically-based Mental Illness, We may refer to the current edition of the Diagnostic and Statistical Manual of Mental Conditions of the American Psychiatric Association." (See Petrozelli Cert., Exhibit A at page 17 and Exhibit B at page 14.) Full coverage is provided for BBMI while severe limitations are placed on coverage for non-BBMI. More specifically, coverage for non-BBMI is limited to 30-day in patient care benefits and up to 20 outpatient visits per Calendar Year with up to 60 more outpatient visits by exchanging one or more inpatient days. (See Exhibits A & B to Petrozelli Cert.)

The highly redacted documents submitted by Aetna undercut defendant's stated factual position that the named plaintiffs have not been denied parity coverage for treatment of eating disorders or have not exhausted their grievance procedures. Although these issues are irrelevant to the legality of the coverage limitation, which is the central issue in this case, the facts establish that plaintiffs have pursued their grievance procedures or have exhausted their non-BBMI benefits. Requiring that plaintiffs jump over any other procedural hurdles would not serve the ends of justice. Indeed, a review of the records provided by Aetna is quite telling.

Meiskin's daughter first began suffering from anorexia nervosa and began restricting food intake, engaging in excessive exercise and losing weight in January 2005 when she was 13 years old. She was admitted to Somerset Medical Center for inpatient treatment on August 3, 2005 because outpatient treatment was unsuccessful and she had lost 9 pounds in the prior 4 weeks. At that time she weight 84 pounds, which was 80% of normal body weight. On admission she was found to be suffering from dehydration, malnutrition, amenorrhea, orthostatic pulse and blood pressure. She remained hospitalized until August 25, 2005, when she was discharged and entered into a partial hospitalization mental health program. However after just a few days, she had to be readmitted to Somerset Medical Center on August 29, 2005 after she lost 4 pounds in the one weekend she was not in inpatient care. She remained in the inpatient program until September 6, 2005 when she was stepped down to the partial hospitalization mental health program. She remained in this program until October 5, 2005 when she entered into outpatient treatment. On December 16, 2005, Ms. Meiskin's mother called regarding a rejected claim filed by outpatient therapist Leslie Richmond and was informed by Aetna that the claim was denied based upon the fact that Marisa's 2005 benefits had been maxed. In addition, confusing service request history printouts provided by Aetna document a telephone call by Mr. Meiskin to

6

Aetna inquiring as to a claim for September 7-30, 2005 and he was advised that that benefits were maxed out for both inpatient and outpatient for 2005. When he indicated that the provider had been listed as receiving payment for that period Aetna indicated that the payment *may* have been made in response to an appeal by the facility. None of the documents produced by Aetna clarify the status of the payments. (Nagel Cert. and Exhibit A)

Most recently, the Meiskin child has been hospitalized at Avalon Hills in Utah at the cost of approximately $850.00 per day. It is expected that her stay will be for 4-6 months, leaving the Meiskin family with a bill of between $75,000.00 - $125,000.00. (Nagel Cert. and Exhibit B)

In the clinical case study prepared by Aetna for appeal purposes, Christina DeVito was described as a 19 year old female admitted for inpatient mental health treatment for a history of bipolar depression, suicidiality, and a 5 year history of substance abuse, including cocaine dependency with myocardial infarction, seizures related to substance use and a history of bulimia.[2] (Nagel Cert and Exhibit C)

Thus, it appears that Christina DeVito suffers from a host of mental health ills, including an eating disorder among them. A review of the extremely redacted medical records and grievance

---

[2] Often patients suffering from eating disorders have other mental heath issues and multiple diagnoses.

7

records produced by Aetna is difficult to sort out. In some instances it is difficult to determine the disposition of the specific grievance or whether it was specifically related to treatment for the eating disorder or one of the other problems which this insured suffers from.

For example, on December 17, 2002, Magellan denied authorization for Partial Hospitalization Mental Health treatment at the Renfrew Center for an eating disorder from 12/16/2002 finding that it was not medically necessary. Then, on March 24, 2003 Magellan denied a request for Intensive Outpatient Mental Health treatment at Renfrew as of March 22, 2003. Based upon notes produced by Aetna, on March 26, 2003 the provider initiated a verbal appeal of that decision. The unidentified author of these notes states: "Provider is appealing to have member in IOP therapy under their program. The member is already under family therapy but Magellan has denied. Authorization for treatment in the IOP Program. The Member has a parity diagnosis.[3] The provider is appeal [sic] for extension of coverage for this treatment." On March 31, 2003, Aetna wrote back to the Renfrew Center providing an address where its appeal should be filed. The materials produced by Aetna do not provide

---

[3] Plaintiffs counsel would like discovery regarding the identity of the author of these notes and the determination, meaning and effect of the 'parity diagnosis" and what aspect of Ms. DeVito's illness which Aetna contends it relates to.

any other information as to the further processing of this appeal or its disposition. (See Nagel Cert. and Ex. D)

Through 2004 and 2005 Christina DeVito was initially denied coverage with respect to various courses of treatment and in some instances the decisions were reversed on appeal. (See e.g. July 21, 2004 reversal at second level Appeal for inpatient mental health coverage for 3/15/2004-3/19/2004 at Bergen Regional Medical Center; on April 12, 2006 the IURO handling Mr. DeVito's Stage 3 appeal regarding Aetna's denial of authorization for inpatient mental health treatment from 4/5/06 forward reversed Aetna's decision, finding that "Hospitalization is medically necessary for this patient until placement in an appropriate residential facility is arranged. This should be accomplished quickly to further her medical needs."(See Nagel Cert. and Exhibit E)

A service request history log provided by Aetna shows that the DeVito family also filed an appeal on June 30, 2006 for date of service January 11-23, 2006. On July 6, 2006 the member received a certified letter advising it was received but no appeal was filed on record, nothing was found for date of Service 4/12/06-5/1/2006 and the member was given a fax number to resend the appeal. Another service request history log shows that Ms. Devito was authorized for 5 days inpatient at

Hackensack Medical Center for biologically based mental health as of 3/24/2006. (Nagel Cert. and Exhibit F)

Most recently, on January 17, 2007 Mr. DeVito inquired about the appeal he filed on June 30, 2006 regarding Christina DeVito's stay at the Renaissance Institute in Boca Raton Florida, from April 12, 2006 until May 22, 2006. She also was hospitalized from 4/26/06 to 5/2/06 as an involuntary commitment at Fair Oaks. Records available at the present time do not provide any disposition to these appeals. (Nagel Cert. and Exhibit G)

<u>ARGUMENT</u>

<u>POINT I</u>

<u>THIS COURT SHOULD NEITHER ABSTAIN NOR DEFER TO DOBI</u>

Aetna's abstention argument must fail because pending legislation is simply not a valid reason for this Court to ignore the plight of sufferers of eating disorders who are being denied coverage and necessary treatment. Indeed, Aetna has presented no legal precedent for the argument that this would be a valid basis to abstain. Federal courts have an obligation to exercise their jurisdiction, and thus, abstention is always the exception, rather than the rule. <u>Hawaii Housing Auth. v. Midkiff</u>, 467 U.S. 229, 236 (1984).

This Circuit has recognized that abstention is inappropriate in cases in which the federal courts have exclusive jurisdiction over at least a portion of the claims presented. <u>Riley v. Simmons</u>, 45 F.3d 764, 773-774 (3rd Cir.1995). It is clear that the federal courts have jurisdiction over all the claims which may be asserted under ERISA and exclusive jurisdiction of those claims wherein plaintiffs are seeking equitable relief which would be available under 29 U.S.C. 1332(a)(3). Moreover, as noted in <u>Riley v. Simmons</u>, 45 F.3d 764, 771 (3d Cir. 1995), abstention may only be considered after the Court determines that timely and adequate state court review is available. No such review is available to the plaintiffs in this

case. Finally, as set forth in New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 361 (1989), the other requirements for abstention mandate that the court find "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar", or where federal review would be disruptive of "state efforts to establish a coherent policy with respect to a matter of substantial public concern." Neither of these prongs is present in this case which concerns a contractual limitation on coverage found in private insuring agreements. Clearly, this is the type of case which the federal district courts are charged with the responsibility for adjudicating.

DOBI's ministerial administration of the IURO system, (which adjudges the propriety of coverage denials on the basis of medical necessity) hardly qualifies as an administrative agency delineating public policy through administrative regulations or enforcement. An IURO is not a governmental agency and each IURO decision is made by a different panel of industry experts leading to admittedly inconsistent results.

Consequently, this is also not the type of situation where an agency's primary jurisdiction is a basis for the court to defer action. Where an administrative agency is incapable of providing a complete remedy the courts will not find that the

agency has primary jurisdiction or require exhaustion. See <u>Great</u> <u>Bay Hotel & Casino v. Tose</u>, 34 F.3d 1227 (3d Cir. 1994).

Additionally, the plan documents for both DeVito and Meiskin do <u>not</u> require exhaustion through the third level of appeal prior to filing an action under ERISA. (See Exhibit H to Nagel Cert.) While we contend that exhaustion is irrelevant to whether the limitation on coverage is lawful, under no circumstances can Aetna seek to impose a third level of review which is not even required by the plan documents.

Aetna also contends that plaintiffs are not entitled to a judicial remedy because they may seek a modification of the regulations interpreting the Parity law by petitioning DOBI. This argument must fail.  It is simply absurd to suggest that a policyholder should be required to pursue a slow, inefficient, and ineffective route in order to obtain proper health care reimbursements.

The applicable regulations hardly provide a remedy. N.J.A.C. 11:1-15.1 <u>et</u> <u>seq</u>. provides that a person may file a petition to amend a rule and DOBI then has 60 days to file a notice of action on the petition either denying the petition or granting the petition. If DOBI grants the petition it has an additional 90 days to file a notice of proposed rule or notice of prepreposal for a rule. Alternatively DOBI may 'refer the matter for further deliberation' for an additional 90 days and

13

then decide to grant or deny the petition and initiate a rulemaking proceeding if granted. At the conclusion of that period, if granted, the Department may initiate a rulemaking proceeding. There is then another set of regulations governing whether there shall be public hearings on the proposed rule and an extended public comment period. Thus, it is possible that a party seeking relief through rule-making could be waiting a total of 240 days just to learn whether or not a rulemaking proceeding will be initiated based upon their petition. The rule change mechanism simply does not provide the insured with any alternative to litigation, and this court should not required an insured to enter into that process.

## POINT II

### WHETHER TREATED AS AN ERISA CLAIM OR A STATE LAW CLAIM PREEMPTION DOES NOT PRECLUDE PLAINTIFFS FROM RECEIVING THE PROTECTION PROVIDED BY THE PARITY LAW

The Parity Law is exempt from complete preemption by virtue of ERISA's savings clause, 29 U.S.C.A. 1144(b)(2)(A). This statute meets all of the requirements of the savings clause as noted in <u>Kentucky Assn. Of Health Plans v. Miller</u>, 538 U.S. 329, 341 (2003), specifically the Parity Law "regulates insurance" and it is directed towards the insurance industry, and substantially affects the risk pooling arrangement between the insurer and the insured. Thus, although ERISA provides for broad preemption, to the extent that plaintiffs are asserting claims under the Parity Law these claims are not preempted. Moreover, since the language of the Parity Law is contained in the insurance contracts plaintiffs have the right to assert these contractual claims in addition to their ERISA claims.

## POINT III

### PLAINTIFFS' COMPLAINT MAY NOT BE DISMISSED UNDER FED. R. CIV. P. 12(b)(6)

"A motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." In re Burlington Coat Factory Litig., 114 F.3d 1410, 1420 (3d Cir.1997). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id. at 1420. Although a Court may consider documents integral to or explicitly relied upon in the complaint in adjudicating a motion to dismiss, In re Burlington Coat Factory Secs. Litig., 114 F.3d at 1426, in this case Aetna is relying upon numerous documents and facts which are simply not appropriately part of the record on a motion to dismiss under Rule 12(b)(6) including documents related to the exhaustion issue, the nature of plaintiffs' mental illnesses, etc. At this stage of the litigation, the Court must assume that the facts alleged by plaintiffs are true. These facts include that the plaintiffs have eating disorders, that the medical community has determined that these mental illnesses are biologically based, that Aetna has failed to provide benefits to

16

plaintiffs which are in parity to other biologically based illnesses. Aetna's argument that the Complaint should be dismissed because the plaintiffs have not alleged or cannot establish that the denial of benefits was arbitrary and capricious is clearly premature. As stated in <u>Langford v. City of Atlantic City</u>, 235 F.3d 845, 847 (3d Cir. 2000) "The complaint will be deemed to have alleged sufficient facts if it adequately put[s] the defendant on notice of the essential elements of the plaintiff's cause of action." Plaintiffs contend that Aetna certainly knows exactly what plaintiffs' claims are. There is no requirement that plaintiff assert specific facts to support the ERISA violation with certain talismanic language to avoid dismissal.    Moreover, leave to amend must be granted before dismissing a complaint that is deficient. <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002); <u>Empire Kosher Poultry, Inc. v. United Food and Commercial Workers Health and Welfare Fund of Northeastern Pennsylvania</u>, 285 F.Supp. 2d 473, 577 (M.D.Pa. 2003). Hence, even if this Court did deem the allegations insufficient, leave to amend would be requested at this juncture and dismissal with prejudice would be totally inappropriate.

Further, Aetna cites to a series of cases where plaintiffs did not succeed in challenging a denial of benefits, but none of these cases were decided on a Rule 12(b)(6) motion. For example,

Nazay v. Miller, 949 F.2d 1323 (3d Cir. 1991) was decided in the context of an appeal of a summary judgment entered in favor of the employee not the plan administrator. Shiffler v. Equitable Life Assurance Society, 838 F.2d 78, 83 (3d Cir. 1988) was decided in the context of a summary judgment motion not a motion to dismiss. So too in Werbler v. Horizon Blue Cross Blue Shield of New Jersey, 2006 WL 3511181 (D.N.J. Dec. 5, 2006), the decision that the denial of benefits was not arbitrary and capricious was made in a summary judgment motion, not a motion to dismiss on the pleadings. Moreover, Aetna's reliance upon this opinion for the application of an arbitrary and capricious standard, rather than the heightened standard is misplaced. The denial of benefits asserted by plaintiffs in the instant case was not made by an IURO but rather by Aetna. Hence, at this early stage of the proceedings and based upon this meager record, the heightened form of the arbitrary and capricious standard employed in Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 378 (3d Cir. 2000) should be presumed to apply. In Pinto, the court concluded that a heightened standard of review should be applied to insurance companies paying ERISA benefits out of their own funds. Using the heightened standard the Court reversed an award of summary judgment in favor of the insurance company finding that there was an issue of material fact as to whether or not Reliance acted arbitrarily and capriciously in

denying disability benefits to Pinto even though two doctors favored an award of benefits and two favored a denial. The Court held that the fact finder could conclude that Reliance's decision to credit its doctors over the other doctors was the result of self-dealing instead of the trustee carefully exercising its fiduciary duties to grant Pinto the benefits due her under the plan. As set forth elsewhere in this brief, the plan documents do not require that a claimant exhaust the IURO procedure prior to filing suit under ERISA. Aetna presses the argument that the named plaintiffs failed to exhaust their remedies in one breath and in the other breath assert that Werbler rather than Pinto should be applied. Aetna is taking inconsistent positions.

Similarly, Aetna argues that plaintiffs have failed to state a claim for breach of fiduciary duty, but here again, a ruling on the viability of this claim on a 12(b)(6) motion is premature. Moreover, Aetna's reliance upon Great-West Life & Annuity Ins. Co., v. Knudson, 534 U.S. 204, 221 (2002) is misplaced, as that case only dealt with the fiduciary's right to seek restitution not a beneficiary's rights to equitable relief. See Carducci v. Aetna U.S. Healthcare, 204 F. Supp. $2^d$ 796 (D.N.J. 2002) aff'd, Levine v. United Healthcare Corp. 402 F.3d 156 (3d Cir. 2005), cert. den. 126 S.Ct. 747 (2005).

19

Thus, Aetna has not cited to any cases where the Court's have disposed of the merits of plaintiffs claim for benefits on a Rule 12(b)(6) motion.

## POINT IV

## AETNA'S ARGUMENT REGARDING EXHAUSTION LACKS MERIT

For purposes of adjudicating a Rule 12(b)(6) motion, the court must assume that the treatment sought was medically necessary as plaintiffs allege. Therefore, the issue becomes whether or not Aetna's limitation on Non-BBMI is lawful. According, Aetna's attempts to focus the court's attention on plaintiff's exhaustion is wholly irrelevant to the issue presented in this action; namely the contractual coverage limitations. Trial will focus on whether eating disorders are biologically based not on whether the individual plaintiffs pursued their internal grievance appeals prior to filing suit. If plaintiffs were challenging Aetna's conclusions as to medical necessity as the basis for their claim Aetna's exhaustion argument might have some teeth. However, because medical necessity must be presumed for purposes of this motion, exhaustion is a moot issue.

Moreover, neither the internal grievance procedure nor the IURO process, which plaintiffs cannot be forced to undertake prior to filing suit, are designed to address the issue of whether or not eating disorders are biologically based, but rather are only designed to deal with the issue of medical necessity.

21

Pursuant to N.J.A.C. 11:24-8.7 (g), the only determination which the IURO is authorized to make is "whether, as a result of the HMO's utilization management decision, the member was deprived of medically necessary covered services." Thus, whether or not the eating disorder is biologically based is not within the scope of the IURO review. Further the IURO never addresses whether the coverage limitation is lawful.[4]

The cases relied upon by Aetna where failure to exhaust was found to preclude litigation all arose in the context of summary judgment motions not motions to dismiss. For example, in Harrow v. Prudential Co. of America, 279 F.3d 244, 246 (3d Cir. 2002), relied upon by Aetna, plaintiff commenced a class action under ERISA for denial of payment for Viagra. The Third Circuit noted that Prudential had filed a motion to dismiss which the court denied so that discovery could be undertaken. 279 F.3d at 247. After discovery was complete, a summary judgment motion was filed on exhaustion grounds and the motion was granted. The

---

[4] Neither the plaintiffs' Plans nor any communications sent by Aetna to the plaintiffs require that the insured exhaust the level 3 appeal prior to bringing suit. The plan documents provide that the internal appeals must be exhausted before either "the filing of a Complaint or External appeal" or "the establishing of any litigation . . unless serious or significant harm to the Member has occurred or will imminently occur." (See e.g., Exhibit A to Petrozelli Aff. at p. 35-36) Moreover, when a letter is sent by Aetna denying a Stage II appeal, it provides: "If you do not agree with the final determination on review, you have the right to bring a civil action under Section 502(a) of ERISA, if applicable." (See Exhibit E to Nagel Cert.)

appeals court indicated that it reviewed the lower court's determination utilizing an abuse of discretion standard and that the court did not abuse its discretion in that instance.

In this case, Aetna is seeking dismissal at the pleading stage. The parties have had no opportunity to engage in discovery, and given the cloudy nature of the redacted documents produced, even if this court were inclined to require exhaustion there are fact issues as to exactly what was appealed and how these appeals were disposed of. Moreover, in Harrow, the Court rejected plaintiff's futility argument because it noted that several of Prudential's employees testified that the outcome of the internal appellate process was not predetermined. Moreover, after discovery was complete it became apparent that a telephone call to Prudential was the only step Mr. Harrow took towards exhausting his remedies. No evidence was presented that any of the other members of the purported class had attempted to exhaust their remedies either.

The steps taken toward exhaustion in our case are far greater. Moreover, the blanket policy taken by Aetna that eating disorders are not biologically based and do not therefore entitle the insured to full coverage is neither likely to be suddenly reversed in an individual case nor even likely to be considered as part of the appeals process, since this issue is

not part of the utilization review analysis to which the appeals process is addressed.

In **Harrow**, **supra** at 250, the Court discussed the cases wherein exhaustion was excused based upon futility and enunciated the following factors gleaned from cases such as Berger v. Edgewater Steel Co., 911 F.3d 911 (3d Cir. 1990): (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile.

In our case, even if this Court were inclined to address exhaustion, there has been no opportunity to test these factors in discovery and based upon everything contained in the file to date there is simply no indication that Aetna would suddenly reverse its long-standing company policy and in a given case decide that an eating disorder is biologically based. Only through discovery can the parties determine whether futility can be established.

In Majka v. Prudential Ins. Co., 171 F. Supp. 2d 410 (D.N.J. 2001), also relied upon by Aetna, the finding adverse to plaintiffs came as a result of a motion for summary judgment,

not a motion to dismiss. The court noted that exhaustion may be excused "if the claimant is threatened with irreparable harm, if resort to administrative remedies would be futile, or if the claimant had been denied meaningful access to the plans' administrative procedures." The Court then pierced the allegations of the complaint and noted that none of these grounds the Court's use to excuse exhaustion applied. In granting summary judgment for failure to exhaust, the court further noted that its dismissal would be without prejudice and that because the internal appeals procedure had no time limit plaintiff could go back and exhaust her remedies and then return to court. Id. at 416.   No such option is available to the plaintiffs in this case.

In Carducci v. Aetna U.S. Healthcare, 247 F. Supp.2d 596 (D.N.J. 2003), rev'd on other grounds, 402 F.3d 156 (3d Cir. 2005), cert. den. 126 S. Ct. 747 (2005), defendant argued that the complaint should be dismissed for failure to exhaust the remedies of the benefits plan. The plaintiffs argued that requiring exhaustion would be futile and the Court reviewed the factors set forth above. Judge Simandle refused to dismiss, stating:

> Here, plaintiffs readily admit that they never
> pursued their claims under their insurance
> policies' administrative processes, but they
> argue that it would have been futile to do so.
> This Court has considered the five factors of

25

> the futility exception and has decided that it
> cannot determine whether the futility exception
> to the exhaustion requirement applies at this
> stage because the inquiry requires factual
> determination. At this motion to dismiss stage,
> it does seem clear that plaintiffs did not
> "diligently pursue administrative relief at all.
> However, it is unclear whether plaintiffs "acted
> reasonably in seeking judicial relief" or
> whether plaintiffs would have obtained relief in
> the administrative process. . . A defendant
> asserting that exhaustion would not be futile as
> a matter of fact in its individual circumstances
> may bring a motion for summary judgment on this
> ground. Id. at 611.

In this case, factual issues abound both as to what steps were taken in pursuit of exhaustion, whether further attempts at exhaustion would be futile and whether the administrative process is even designed to address the issue at hand. There is evidence that attempts to pursue administrative relief were undertaken. Moreover, given the serious nature of the illnesses involved plaintiffs contend that is reasonable to seek judicial relief at this juncture. In addition, there is a fixed policy denying benefits. Finally, the mixed-up nature of the manner in which appeals were handled, with appeals being misplaced in some instances, indicates that Aetna may not have always followed its own procedures.

Certainly the named plaintiffs in this case did more than the plaintiffs in either Harrow or Carducci. Hence, Aetna's motion to dismiss on the basis of failure to exhaust should also be denied.

## CONCLUSION

For all of the foregoing reasons, Aetna's motion to dismiss should be denied in its entirety.

Respectfully submitted,

BRUCE H. NAGEL

Dated:  June 26, 2007

H:\bhn\Anorexia Class Action\brief opp motion to dismiss 6.26.07 Devito.doc

27