FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DEVITO et al., | : |  |
|  | : |  |
| Plaintiffs, | : | Civil Case No. 07-0418 (FSH) |
|  | : |  |
| v. | : | **ORDER and OPINION** |
|  | : |  |
| AETNA, INC. et al., | : | Date: February 25, 2008 |
|  | : |  |
| Defendants. | : |  |

**HOCHBERG, District Judge**

This matter is before the Court upon Defendants' (collectively "Aetna") Motion to Dismiss Plaintiffs' First Amended Complaint (DKT#58). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Plaintiffs also assert jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A) because the amount in controversy allegedly exceeds $5 million and a member of the Plaintiff Class is a citizen of a state different from any Defendant. The Court has considered the arguments of the parties on the papers pursuant to Federal Rule of Civil Procedure 78.

I. FACTS

Named Plaintiffs DeVito and Meiskin are New Jersey residents covered by insurance policies issued by Aetna and governed by ERISA. See First Amended Complaint (DKT#46) ("Compl.") ¶¶ 4, 5. Both Plaintiffs have daughters who suffer from eating disorders and both Plaintiffs have sought coverage for treatment of their daughters' eating disorders under their

1

respective insurance policies. Plaintiff DeVito sought coverage for treatment of eating disorders, which, on at least one occasion, Defendants denied as "not medically necessary." Plaintiff Meiskin sought and was provided benefits for treatment of his daughter's eating disorders, but coverage was cut off when it exceeded the contractual limitations for coverage of non-Biologically Based Mental Illnesses ("BBMI"). The gravamen of Plaintiffs' claims is that Aetna improperly denied coverage for treatment sought for their daughters' eating disorders by improperly classifying eating disorders as "non-Biologically Based Mental Illnesses." In so doing, Plaintiffs allege that Defendants breached their insurance contracts, violated their fiduciary duties, and denied Plaintiffs benefits to which they are entitled.

Plaintiffs' claims are based upon the language of their respective insurance policies. Both policies contain identical language regarding coverage for Biologically-Based Mental Illnesses:

> **BENEFITS FOR BIOLOGICALLY BASED MENTAL ILLNESS OR ALCOHOL ABUSE**. We cover treatment of Biologically-based Mental Illness or Alcohol Abuse the same way We would for any other illness, if such treatment is prescribed by a Network Provider upon prior written Referral by a Member's Primary Care Physician.

Petrozelli Cert. (DKT#6) Ex. A (DeVito policy) at 44; Ex. B (Meiskin Policy) at 39. Both policies define BBMIs in the same way:[1]

---

[1] The definition of Biologically Based Mental Illness in both Plaintiffs' policies substantially tracks the definitions found in New Jersey's Mental Health Parity Law:

> Every enrollee agreement delivered, issued, executed or renewed in this State pursuant to P.L.1973, c. 337 (C.26:2J-1 et seq.) or approved for issuance or renewal in this State by the Commissioner of Health and Senior Services, on or after the effective date of this act shall provide health care services for biologically-based mental illness under the same terms and conditions as provided for any other sickness under the agreement. "Biologically-based mental illness" means a mental or nervous condition that is caused by a biological disorder of the

> **BIOLOGICALLY-BASED MENTAL ILLNESS**.  A mental or nervous condition that is caused by a biological disorder of the brain and results in a clinically significant or psychological syndrome or pattern that substantially limits the functioning of the person with the illness, including but not limited to: schizophrenia; schizoaffective disorder; major depressive disorder; bipolar disorder; paranoia and other psychotic disorders; obsessive-compulsive disorder; panic disorder and pervasive developmental disorder or autism.

Id. Ex. A (DeVito policy) at 10; Ex. B (Meiskin Policy) at 7.

Both policies also contain identical clauses limiting coverage for treatment of non-BBMIs to "twenty (20) outpatient visits per Calendar Year . . . [and] up to thirty (30) days of inpatient care benefits for . . . Non-Biologically-based Mental Illnesses." Id. Ex. A (DeVito policy) at 43; Ex. B (Meiskin Policy) at 39.  Plaintiffs' policies also provide for "up to sixty (60) more outpatient visits by exchanging one or more of the inpatient hospital days . . . ." Id.  Both policies define non-BBMIs in the same way:[2]

> **NON-BIOLOGICALLY-BASED MENTAL ILLNESS**.  An Illness which manifests symptoms which are primarily mental or nervous for which the primary treatment is psychotherapy or psychotropic medication where the Illness is not biologically-based.

> In determining whether or not a particular condition is a Non-Biologically-based

---

> brain and results in a clinically significant or psychological syndrome or pattern that substantially limits the functioning of the person with the illness, including but not limited to, schizophrenia, schizoaffective disorder, major depressive disorder, bipolar disorder, paranoia and other psychotic disorders, obsessive-compulsive disorder, panic disorder and pervasive developmental disorder or autism. "Same terms and conditions" means that the health maintenance organization cannot apply different copayments, deductibles or health care services limits to biologically-based mental health care services than those applied to other medical or surgical health care services.

N.J. STAT. ANN. § 26:2J-4.20.  For reasons discussed in Part III.A of this opinion, the Court's analysis will focus on the language contained in Plaintiffs' respective insurance policies.

[2]   New Jersey's Parity Law does not define the term "non-BBMI."

> Mental Illness, We may refer to the current edition of the Diagnostic and
> Statistical Manual of Mental Conditions of the American Psychiatric Association.

Id. Ex. A (DeVito policy) at 17-18; Ex. B (Meiskin Policy) at 14.

Plaintiffs concede that neither DeVito nor Meiskin fully exhausted Aetna's internal appeals procedure as to each of their claims for benefits prior to filing this suit. On January 26, 2007 Plaintiffs filed a Complaint in this Court. The Court held oral argument on October 10, 2007 on Defendants' motion to dismiss Plaintiffs' original complaint,[3] during which Plaintiffs were granted leave to amend their complaint. The Amended Complaint that is the subject of the present motion to dismiss was filed on October 29, 2007. Defendants filed the instant Motion to Dismiss the First Amended Complaint on November 30, 2007. Defendants first argue that the Court should abstain from considering Plaintiffs' claims under the doctrine expounded in Burford v. Sun Oil Co., 319 U.S. 315 (1943). Defendants argue in the alternative that Plaintiffs' state law claims under New Jersey's Mental Health Parity Law should be dismissed as preempted by ERISA and that all counts should be dismissed for failure to exhaust and for failure to state a claim upon which relief can be granted.

## II. STANDARD

In a motion to dismiss "[w]e are required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to the plaintiff." Haspel v. State Farm Mut. Auto. Ins. Co., 241 Fed. App'x 837, 839 (3d Cir. 2007). A

---

[3] The Court heard oral argument in DeVito v. Aetna, Beye v. Horizon, Civ. No. 06-5337, and Foley v. Horizon, Civ. No. 06-6219, on October 10, 2007.

complaint must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (internal citations omitted). To survive a motion to dismiss, the factual allegations in the complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 1969 (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984)).

### III. DISCUSSION

At the outset it is critical to clarify the issues presented by Plaintiffs' Complaint. Plaintiffs do not challenge New Jersey's Parity Law. See N.J. STAT. ANN. § 26:2J-4.20. Rather, Plaintiffs challenge Defendant Aetna's handling of Plaintiffs' benefit claims under the contractual terms of Plaintiffs' respective insurance policies. See Compl. ¶¶ 11 (Count One) ("Aetna has breached its contract of insurance with plaintiffs and all class members . . . ."), 23 (Count Two) ("By failing to provide coverage for all treatment and care relating to Eating Disorders, Aetna breached their contracts with plaintiffs and the class in violation of ERISA."). Although certain definitions in Plaintiffs' insurance contracts are substantially similar to some contained in the Parity Law, the claims before the court concern Aetna's interpretation of the contractual language as applied to each Plaintiff. Plaintiffs, in essence, contend that their eating disorders should have been handled as Biologically Based Mental Illnesses and covered under the

5

policy provisions that apply to BBMIs. "The denial of benefits by an ERISA plan administrator or fiduciary is reviewed under the arbitrary and capricious standard." Brandeburg v. Corning Inc. Pension Plan for Hourly Employees, 243 Fed App'x 671, 672-73 (3d Cir. 2007); see also Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 393 (3d Cir. 2000) (adopting sliding scale to determine level of scrutiny in arbitrary and capricious review).

*A. Burford Abstention*

Defendants first argue that the Court should abstain under the doctrine expounded in Burford v. Sun Oil Co., 319 U.S. 315 (1943), and should instead defer to the "primary jurisdiction" of the New Jersey Department of Business and Insurance ("DOBI"). Under Burford, the Court undertakes a two-step analysis. "The first question [when considering Burford abstention] is whether 'timely and adequate state-court review' is available." Riley v. Simmons, 45 F.3d 764, 771 (3d Cir. 1995) (citing New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 361 (1989) ("NOPSI")). The second prong of the Burford doctrine, as refined in NOPSI, requires a court to examine three issues: "(1) whether the particular regulatory scheme involves a matter of substantial public concern, (2) whether it is 'the sort of complex, technical regulatory scheme to which the Burford abstention doctrine usually is applied,' and (3) whether federal review of a party's claims would interfere with the state's efforts to establish and maintain a coherent regulatory policy." Chiropractic Am. v. Lavecchia, 180 F.3d 99, 105 (3d Cir. 1999) (internal citation omitted). "Federal courts more readily abstain from a case that contains no issue of federal law." Lac D'Amiante du Quebec, Ltee v. Am. Home Assur. Co., 864 F.2d 1033, 1044 (3d Cir. 1988).

Defendants' arguments focus on Burford's second step. Defendants note that a

"legislative solution," which would prospectively extend Parity Law coverage to eating disorders, has passed the New Jersey Senate and is currently pending before the New Jersey Assembly. Defendants argue that this pending legislature is grounds for <u>Burford</u> abstention. Although a pending bill may be enacted into law and, in the future, change the Parity Law, such a change would not provide coverage to Plaintiffs for the time period relevant to this case. This case involves claims for <u>past</u> coverage of eating disorders and Defendants do not suggest that the proposed bill would apply retroactively. <u>See</u> Transcript of 10/10/2007 Oral Argument ("Tr.") at 84(1)-(8) (conceding that proposed bill is not retroactive). A potential, prospective change in the law does not provide a basis for this Court to abstain from deciding a claim based on contractual language governed by ERISA. Defendants also argue that, if the bill is enacted, there may be a legislative committee report that will provide evidence concerning the definition of BBMIs; anticipated helpful evidence is not grounds for <u>Burford</u> abstention.

Defendants next argue that "[a]doption of Plaintiffs' position would be tantamount to the Court retroactively imposing an insurance mandate that was <u>not</u> imposed by the legislature and regulators." This is not a legal argument. This Court does not decide policy; it interprets ERISA contracts pursuant to ERISA. In both the DeVito policy and the Meiskin policy Aetna promises to "cover treatment of Biologically-based Mental Illness or Alcohol Abuse the same way We would for any other illness." Both policies define BBMI and provide a non-exhaustive list of examples. The policies are therefore silent on whether Plaintiffs' eating disorders are or are not BBMIs. This case requires the Court to review Aetna's administrative record as to its basis for assigning eating disorders to the non-BBMI category.

Plaintiffs' claim is that Aetna was arbitrary and capricious in defining their daughters'

7

eating disorders as non-BBMIs in light of the "including but not limited to" language in the BBMI definition and the content of the non-BBMI definition contained in Plaintiffs' policies. Whether the Parity Law is changed or modified does not affect this case. The above-cited language in the insurance policies governs this case, regardless of further changes in the Parity Law. The Court need not determine what the New Jersey legislature intended when it passed the Parity Law. Rather, the Court is asked only to consider the terms of Plaintiffs' insurance policies and Aetna's handling of benefit claims made pursuant to those policies.

Defendants also argue that the Court should abstain in deference to the New Jersey Department of Banking and Insurance ("DOBI").[4] Defendants' DOBI-related arguments are not grounds for Burford abstention. Although internal administrative appeals of benefit denials are mandatory,[5] a beneficiary may, but is not required to, seek an appeal to an Independent Utilization Review Organizations ("IURO") through DOBI following those appeals.[6] N.J. ADMIN. CODE § 11:24-8.7; see also Tr. 49(22)-(24). The mere availability of IURO review does not warrant Burford abstention and nothing in Burford suggests otherwise. See Glushakow v.

---

[4] Defendants also point to two state documents that it believes support its DOBI-related abstention argument: a 2005 report issued by the Mandated Health Benefits Advisory Commission ("MHBAC"), prepared in collaboration with DOBI, and a decision of the State Health Benefits Commission. At this stage of the litigation, all that can be said of the MHBAC report and the State Health Benefits Commission's decision is that they may be relevant evidence at a later stage of the litigation on the question of whether Aetna acted arbitrarily or capriciously or breached its fiduciary duty in denying Plaintiffs' claims for benefits.

[5] Defendants' exhaustion argument is discussed in more detail infra, Part III.C.

[6] An IURO is "an independent organization, comprised of physicians and other health care professionals representative of the active practitioners in New Jersey, with which [DOBI] contracts in accordance with [N.J. ADMIN. CODE §] 11:24-8.8 to conduct independent medical necessity or appropriateness of services appeal reviews brought by a member or provider on behalf of the member, with the member's consent." N.J. ADMIN. CODE § 11:24-1.2; see also N.J. APP. RULE 2:2-3(2); N.J. STAT. ANN. 52:14B-1, et seq. (NJ APA).

Confederation Life Ins. Co., 1994 WL 803204 at *6 (citing Burford, 319 U.S. at 362) ("[t]he mere existence of a complex state administrative scheme, or the potential for conflict with that scheme will not support Burford abstention"). "Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)).

For the reasons stated above, the Court will not abstain from Plaintiffs' claims based on the doctrine expounded in Burford v. Sun Oil Co., 319 U.S. 315 (1943). This Court has before it a case about whether an insurer's denials of coverage were arbitrary and capricious in light of language contained in Plaintiffs' insurance policies. The language contained in the policies at issue remains in force regardless of future legislative action.

*B. State Common Law Claims and Parity Law Claim*

Defendants next move to dismiss Plaintiffs' state law claims as preempted under ERISA § 502(a) and § 514(a). At oral argument Plaintiffs conceded that their state law claims (including their claim based on a private cause of action under the Parity Law) were preempted by ERISA § 502(a). See Transcript of 10/10/2007 Oral Argument ("Tr.") at 93(11)-97(3). Nevertheless, Plaintiffs' amended complaint appears to assert a private cause of action under New Jersey's Parity Law. See Compl. ¶ 11.

Even assuming that Plaintiffs did not waive their Parity Law claim at oral argument, the Court now concludes that Plaintiffs' Parity Law claim is pre-empted by ERISA. As discussed in Part I, supra, Plaintiffs' policies contain language substantially similar to that contained in the

9

Parity Law.  As a result, even if the Parity Law provides a private cause of action, the parity language contained in Plaintiffs' policies is coterminous with any privately enforceable right that might arise under the Parity Law.  The Court therefore finds that Plaintiffs would have no private cause of action under the Parity law that they do not already have under the terms of their respective policies.  This point is critical to the Court's preemption analysis.

In Aetna Health Inc. v. Davila the Supreme Court noted that "ERISA's 'comprehensive legislative scheme' includes 'an integrated system of procedures for enforcement.'  This integrated enforcement mechanism, ERISA § 502(a) . . . is a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans."  542 U.S. 200, 208 (2004) (internal citations omitted).  The Court went on to conclude that

> [i]t follows that if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B).  In other words, if an individual, at some point in time, could have brought his claim under ERISA §502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

Aetna Health, 542 U.S. at 210.

In the case at bar, Plaintiffs' alleged entitlement to benefits under either the Parity Law or ERISA arises "only because of the terms of an ERISA-regulated employee benefit plan . . . ."  Id. Stated differently, Parity Law "liability would exist here only because of [Defendants'] administration of ERISA-regulated benefit plans. [Defendants'] potential liability under the [Parity Law] in th[is] case[], then, derives entirely from the particular rights and obligations

10

established by the benefit plans." Id. at 213.  Further, because the parity language in Plaintiffs' policies gives rise to the same rights as those arguably available under the Parity Law, "no legal duty (state or federal) independent of . . . the plan terms [has been] violated." Id.  In other words, Defendants' duties under the Parity Law are identical to their duties under the parity language in Plaintiffs' policies.  Therefore, because Plaintiffs can bring their claims under ERISA § 502(a)(1)(B), and because there is no other independent legal duty implicated by Defendants' actions, any individual cause of action under the Parity Law would be completely pre-empted by ERISA § 502(a)(1)(B) and the Supreme Court's preemption analysis in Aetna Health.

Plaintiffs' sole argument against preemption is that the Parity Law "meets all of the requirements of [ERISA's "savings clause," § 514(b)(2)(A)] as noted in Kentucky Assn. of Health Plans v. Miller, 538 U.S. 329, 341 (2003), specifically that the Parity Law 'regulates insurance' and it is directed towards the insurance industry, and substantially affects the risk pooling arrangement between the insurer and the insured."  Shortly after Aetna Health was decided, the Third Circuit relied upon it in Barber v. Unum Life Insurance Co. of America, 383 F.3d 134 (3d Cir. 2004), to address an argument similar to Plaintiffs'.  In Barber Plaintiff asserted a claim under 42 PA. CONS. STAT. § 8371 for the defendant's alleged bad faith in denying benefits. 383 F.3d at 136.  The Pennsylvania statute at issue provided that "if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions: . . . (2) Award punitive damages against the insurer." 42 PA. CONS. STAT. § 8371.  The Third Circuit looked to the Supreme Court's preemption analysis in Aetna Health and concluded that

> [r]eading Pilot Life, Rush Prudential, and Aetna Health together, a state statute is

11

> preempted by ERISA if it provides "a form of ultimate relief in a judicial forum that added to the judicial remedies provided by ERISA," or stated another way, if it "duplicates, supplements, or supplants the ERISA civil enforcement remedy."

Barber, 383 F.3d at 140 (internal citations omitted).  Because the Pennsylvania statute's provision of punitive damages "supplement[ed] the scope of relief granted by ERISA," the court held that it was preempted.  Id. at 141.

The Third Circuit went on to consider the plaintiff's argument under ERISA's savings clause, § 514(b)(2)(A).  See Barber, 383 F.3d at 140; 29 U.S.C. § 1144(b)(2)(A).  The plaintiff argued that the "savings clause" saved his state statutory claim from preemption because 42 PA. CONS. STAT. § 8371 "regulates insurance."  In its conclusion, the Third Circuit again quoted Aetna Health, noting that

> ERISA § 514(b)(2)(A) must be interpreted in light of the congressional intent to create an exclusive federal remedy in ERISA § 502(a). Under ordinary principles of conflict pre-emption, then, even a state law that can arguably be characterized as 'regulating insurance' will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme.

Barber, 383 F.3d at 141 (quoting Aetna Health, 542 U.S. at 217-18).  The court thus held that "even if 42 Pa. C.S. § 8371 were found to 'regulate insurance' under the saving clause, it would still be preempted because the punitive damages remedy supplements ERISA's exclusive remedial scheme."  Barber, 383 F.3d at 141.

The Third Circuit's analysis in Barber applies to the case at bar.  As noted above, Plaintiffs' state Parity Law claim duplicates their policy-based claim for benefits under § 502(a).  Based on these Plaintiffs' insurance policies, even if the Parity Law were to provide a private cause of action for improperly denied benefits, that cause of action would either "duplicate[]" or "supplement[]" remedies already provided by the terms of Plaintiffs' ERISA-regulated plans.

See Barber, 383 F.3d at 140.  The Court concludes, therefore, that based on Aetna Health and Barber, the savings clause does not preclude preemption of Plaintiffs' Parity Law claim.

Plaintiffs' state-law claims for punitive damages are also preempted.  It is settled law that ERISA does not provide compensatory or punitive damages.  See, e.g., DiFelice v. Aetna U.S. Healthcare, 346 F.3d 442, 458 (3d Cir. 2003) (Becker, J., concurring) (noting that "a string of Supreme Court cases has interpreted ERISA to disallow any recovery of compensatory or punitive damages" and citing Mass. Mutual Life Ins. Co. v. Russell, 473 U.S. 134 (1985) and Mertens v. Hewitt Associates, 508 U.S. 248 (1993)); Pane v. RCA Corp., 868 F.2d 631, 635 (3d Cir. 1989); Finocchiaro v. Squire Corrugated Container Corp., No. 05-5154, 2007 WL 608462, *4 (D.N.J. Feb. 23, 2007).

*C. Failure to Exhaust*

Defendants argue that Plaintiffs' claims must be dismissed for failure to exhaust the grievance procedures mandated by their insurance policies.  Plaintiffs concede that their policies require beneficiaries to exhaust two levels of internal appeals before seeking review in an IURO or in court.  See Petrozelli Cert. (DKT#6) Ex. A at 35-36 (DeVito plan) ("The Member must complete two levels of Our review before pursuing an Appeal to an [IURO] or bringing lawsuit against Us . . . ."), Ex. B at 30 (Meiskin plan) ("The foregoing [two levels of internal appeal] are mandatory and must be exercised prior to [further action on the claim].").  Nevertheless, Plaintiffs contend that resort to Aetna's internal appeals process would have been futile and therefore that failure to exhaust their internal remedies should be no barrier to their present claims.

The Third Circuit has enumerated several factors that a court must consider when faced

13

with a futility argument.

> Whether to excuse exhaustion on futility grounds rests upon weighing several factors, including: (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile. Of course, all factors may not weigh equally.

Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 250 (3d Cir. 2002).

Plaintiffs allege that "[t]he entire appeal process is controlled by Aetna and is designed to implement the corporate policy that eating disorders are not biologically based, thus resulting in the denial of benefits for eating disorders." See Compl. ¶ 9. This allegation is sufficient as to Plaintiff Meiskin, whom Defendants concede has received treatment for an eating disorder and has exceeded her plan's benefit limits for non-BBMIs.

Defendants also concede that Plaintiff DeVito was denied benefits for treatment for eating disorders on at least two occasions as "not medically necessary."[7] Plaintiff DeVito alleges that the denial of coverage as non-medically necessary is pretextual and that "[t]he determination of the non-biologic basis of the eating disorders is intertwined with and one of the basis [sic] of the position of Aetna that the care and treatment for the eating disorders is not medically

---

[7] Although Defendants argue that "[n]either the Mental Health Parity Law nor the SEHB plans allow Aetna to presume all treatment for BBMI or non-BBMI is 'medically necessary,'" this is immaterial to the present motion. Plaintiffs do not allege that Defendants are required to find all treatment for eating disorders "medically necessary." Rather, Plaintiffs allege that Defendants' denial of claims on grounds that the treatment was "not medically necessary" was pretextual. Plaintiffs allege that Defendants have improperly denied some claims as "not medically necessary" because of Defendants' policy of denying all such claims in violation of the terms of Plaintiffs' contracts. Whether Plaintiffs' pretext allegations are true or false is an issue that will be determined when the case reaches the merits stage.

14

necessary." Compl. ¶ 10.

Plaintiffs have sufficiently pled that their resort to Aetna's internal appeals process would have been futile for both Plaintiff Meiskin and Plaintiff DeVito. Plaintiff Meiskin is entitled to discovery on his allegations that under the Harrow factors, it would have been futile to appeal Aetna's determination that eating disorders are non-BBMIs. Plaintiff DeVito must demonstrate – either at trial or in a subsequent motion to dismiss – the connection between those claims denied as "not medically necessary" and Defendants' allegedly improper treatment of eating disorders as non-BBMIs. This may be a difficult burden for Plaintiff DeVito to carry, but his allegations nevertheless entitle him to proceed with discovery at this stage of the litigation. A failure to exhaust administrative remedies argument will be properly raised in a Motion for Summary Judgment, where Plaintiffs must provide evidence to support their assertions. See, e.g., Owens-Wolkowicz v. Corsolutions Med., Inc., No. 05-0277, 2005 WL 1592903, *3 (E.D. Pa. June 30, 2005).[8]

### D. Breach of Fiduciary Duty

Defendants move to dismiss Plaintiffs' Third Count for breach of fiduciary duty.

---

[8]  Defendants argue that "[t]o avoid [dismissal on grounds of failure to] exhaust[], a claimant must make a 'clear and positive' showing of futility," quoting Harrow v. Prudential Ins. Co. of America, 76 F. Supp. 2d 558, 562 (D.N.J. 1999), for this proposition. Harrow, however, was decided at the summary judgment stage, Harrow, 76 F. Supp. 2d at 559, as was the case upon which the Harrow court relied, see Canale v. Yegen, 782 F. Supp. 963, 965 (D.N.J. 1992) (cited in Harrow, 76 F. Supp. 2d at 562). Canale, in turn, also relied – with one exception – upon cases at the summary judgment stage. See Canale v. Yegen, 782 F. Supp. 963, 972 (D.N.J. 1992) ("In order to merit waiver of the exhaustion requirement a claimant must provide not merely 'bare allegations of futility,' but a 'clear and positive' showing of futility.") (citing Makar v. Health Care Corp. of Mid-Atlantic (Carefirst), 872 F.2d 80, 83 (4th Cir. 1989); Tomczyscyn v. Teamsters, Local 115 Health & Welfare Fund, 590 F. Supp. 211, 215 (E.D. Pa. 1984); and Grumbine v. Teamsters Pension Trust Fund, 638 F. Supp. 1284, 1287 (E.D. Pa. 1986)).

Defendants argue that Plaintiffs' breach of fiduciary duty claim pursuant to ERISA § 502(a)(3) is duplicative of their claim for benefits under ERISA § 502(a)(1)(B). Defendants direct the Court to Varity Corp. v. Howe, 516 U.S. 489, 515 (1996) to support their argument that a plaintiff may not bring a claim for breach of fiduciary duty that is duplicative of her claim for benefits under § 502(a)(1)(B).

There is a split among circuits and within this district as to the effect of Varity Corp. and Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002), on a plaintiff's ability to simultaneously pursue claims for benefits under § 502(a)(1)(B) and for breach of fiduciary duty under § 502(a)(3). See, e.g., Wolfe v. Lu, No. 06-0079, 2007 WL 1007181, *8-9 (W.D. Pa. Mar. 30, 2007) (noting that "the issue has been addressed by many district courts within our circuit with differing results" and collecting cases); Tannenbaum v. UNUM Life Ins. Co. of Am., No. 03-1410, 2004 WL 1084658, *3 (E.D. Pa. Feb. 27, 2004) (noting that "[t]he courts of appeals are split over whether Varity ever permits a plaintiff who has been denied benefits to simultaneously bring an action for benefits under § 1132(a)(1)(B) and an action for breach of fiduciary duty under § 1132(a)(3)(B)" and collecting cases). The Third Circuit has not expressly addressed this issue. See Wolfe, 2007 WL 1007181 at *8.

The Court is persuaded by the reasoning of those courts that have found that Varity does not establish a bright-line rule at the motion to dismiss stage of the case. See, e.g., Wolfe, 2007 WL 1007181 at *8-9; Parente v. Bell Atl. Pa., No. 99-5478, 2000 WL 419981, *3 (E.D. Pa. Apr. 18, 2000) ("Instead of a bright-line rule, Varity requires an inquiry into whether 'Congress provided adequate relief for a beneficiary's injury.'"); Moore v. First Union Corp., No. 00-2512, 2000 WL 1052140, *1 (E.D. Pa. July 24, 2000) ("As was recently noted by this Court, Varity

does not propose a bright-line rule that a claim for equitable relief under § 1132(a)(3) should be dismissed when a plaintiff also brings a claim under § 1132(a)(1)(B)"); see also Crummett v. Metro. Life Ins. Co., No. 06-1450, 2007 WL 2071704, *3 (D.D.C. Jul. 16, 2007) ("The court agrees that dismissal of § 502(a)(3) claims should not automatically occur simply because a complaint also brings § 502(a)(1)(B) claims.").

Several cases in this circuit have concluded that claims under § 1132(a)(3) are not properly dismissed at the motion to dismiss stage merely because a plaintiff has also brought a claim under § 1132(a)(1)(B). See, e.g., Wolfe, 2007 WL 1007181 at *9 ("This Court concludes that the holding of Varity does not mandate dismissal of a § 1132(a)(3)(B) claim whenever a § 1132(a)(1)(B) claim is also brought. At [the motion to dismiss stage], Plaintiff should be allowed to pursue both claims."); Tannenbaum, 2004 WL 1084658 at * 4 ("It is too early in these proceedings to decide whether Plaintiff is contractually entitled to benefits under the Plan. If Plaintiff is not entitled to benefits under the Plan, Plaintiff might still be entitled to 'other appropriate equitable relief' to remedy any breaches of fiduciary duty by Defendants."); Nicolaysen v. BP Amoco Chem. Co., No. 01-5465, 2002 WL 1060587, at * 2 (E.D. Pa. May 23, 2002) ("[The court] denies the motion to dismiss as applied to Plaintiffs' claims for breach of fiduciary duty at this time.  Defendants' argument may be reasserted at the summary judgment stage."); Moore v. First Union Corp., No. 00-2512, 2000 WL 1052140, *1 (E.D. Pa. July 24, 2000) (To dismiss Count II of plaintiff's complaint at this stage would be premature. Therefore, defendants' motion to dismiss will be denied.").  Defendants' motion to dismiss on this basis is denied at this time; it may be renewed in a summary judgment motion after full discovery.

IV. ORDER

**ACCORDINGLY** it is on this 25th day of February, 2008

**ORDERED** that Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (DKT#58) is **GRANTED IN PART** and **DENIED IN PART**; and it is further

**ORDERED** that Defendants' motion to dismiss Plaintiffs' claim under the New Jersey Parity Law, N.J. STAT. ANN. § 17:48-6v and/or N.J. STAT. ANN. § 26:2J-4.20, see Compl. ¶ 11, is **GRANTED**; and it is further

**ORDERED** that Defendants' motion to dismiss (DKT#58) Plaintiffs' claims for punitive damages as preempted by ERISA is **GRANTED**; and it is further

**ORDERED** that Defendants' motion to dismiss is **DENIED** in all other respects.

/s/ Faith S. Hochberg

**HON. FAITH S. HOCHBERG, U.S.D.J.**